UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 18-cv-62064-GAYLES/SELTZER

STEVEN J. BACKALUKAS, as assignee of
CHARMAYNE GOWDY,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE COMPANY,

    Defendant.
_____/

### DEFENDANT'S MOTION TO ENFORCE NON-PARTY SUBPOENAS AND COMPEL PRODUCTION OF DOCUMENTS FROM NON-PARTIES
(Memorandum of Law Included)

Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), pursuant to the Court's order dated March 28, 2019 [D.E. 20] and Federal Rules of Civil Procedure 37 and 45, files this motion to enforce non-party subpoenas served on, and to compel production by, non-parties: (1) J. Samantha Vacciana, Esq. and Trial Lawyers of Florida (f/k/a Trial Lawyers of Palm Beaches) ("Vacciana"); and (2) Thomas Scolaro, Esq. and Leesfield Scolaro ("Scolaro"). As grounds, State Farm states:

    1.    This case involves a "*Coblentz*" claim,[1] by which Plaintiff seeks to recover from State Farm pursuant to a settlement agreement between Plaintiff and State Farm's insured, Charmayne Gowdy, for an underlying claim asserted by Plaintiff against Ms. Gowdy. Under *Coblentz*, "if a liability insurer is informed of an action against its insured, but declines to defend the insured, the insurer may be held to a consent judgment entered in that action, absent fraud or collusion." *Stephens v. Mid-Continent Cas. Co.*, 749 F. 3d 1318, 1321 (11th Cir. 2014); *see also*

---

[1] *Coblentz v. Am. Sur. Co. of New York,* 416 F.2d 1059 (5th Cir. 1969)

*Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 900 (Fla. 2010).  In that situation, the insured "may enter into a reasonable settlement agreement with the [plaintiff] and consent to an adverse judgment for the policy limits that is collectable only against the insurer." *Id.*[2]  Such agreements generally include, as does the one here, an assignment from the insured to the plaintiff of any right of action that the insured might have against her insurer. *See, e.g.*, *Kostelac v. Allianz Global Corp.& Specialty AG*, 517 F. App'x 670, 673 & n.1 (11th Cir. 2013).

    2.    Vacciana was legal counsel for State Farm's insured, Charmayne Gowdy, during the underlying claim and represented her through the mediation and settlement of that claim. State Farm served Vacciana with a non-party subpoena for documents pursuant to Federal Rule of Civil Procedure 45.  (Exhibit 1)  The subpoena requested 10 categories of documents and a privilege log if any documents were being withheld:

1. All documents, correspondence or other written communication, including electronically stored information, e-mails, texts, and electronic communications, and any documents or data compilations reflecting oral communications, relating to the accident that occurred on October 10, 2015, at NW 3rd Avenue and West Hillsboro Boulevard, Deerfield Beach, Florida, between a vehicle driven by your client, Charmayne Gowdy, and a motorcycle driven by Steven J. Backalukas, that are in your possession, custody or control.

2. All photographs or video recordings (<u>to be produced in color JPEG and/or original digital format</u>) relating to the accident that occurred on October 10, 2015, at NW 3rd Avenue and West Hillsboro Boulevard, Deerfield Beach, Florida, between a vehicle driven by your client, Charmayne Gowdy, and a motorcycle driven by Steven J. Backalukas, that are in your possession, custody or control.

3. All correspondence (including emails, text messages, or other electronic communications) between State Farm and Charmayne Gowdy and/or her representatives regarding coverage under Charmayne Gowdy's policy with State Farm for the accident that occurred on October 10, 2015,  at NW 3rd Avenue and West Hillsboro Boulevard, Deerfield Beach, Florida, between a

---

[2] In this case, no action was ever filed against by Plaintiff against Ms. Gowdy, so a consent judgment was never entered, only the *Coblentz* settlement agreement itself.

vehicle driven by your client, Charmayne Gowdy, and a motorcycle driven by Steven J. Backalukas, that are in your possession custody or control.

4. All correspondence (including emails, text messages, or other electronic communications) between State Farm and Steven J. Backalukas and/or his representatives, that are in your possession, custody or control.

5. All correspondence (including emails, text messages, or other electronic communications) between Charmayne Gowdy and/or her representatives and Steven J. Backalukas and/or his representatives that are in your possession, custody or control.

6. All documents, correspondence or other written communication, including electronically stored information, e-mails, texts, and electronic communications, and any documents or data compilations reflecting oral communications, regarding the mediation on May 22, 2017 and the Settlement and Assignment Agreement entered on or around July 20, 2017 between Steven Backalukas and Charmayne Gowdy, including all correspondence or documents exchanged between the parties or their representatives relating to and leading to the mediation and settlement as well as all drafts of the settlement agreement and the final version of the settlement agreement that are in your possession, custody or control.

7. All documents, correspondence or other written communication, including electronically stored information, e-mails, texts, and electronic communications, and any documents or data compilations reflecting oral communications, regarding any claim or claims presented by Steven Backalukas to or against Charmayne Gowdy, relating to the accident that occurred on October 10, 2015, at NW 3rd Avenue and West Hillsboro Boulevard, Deerfield Beach, Florida, including any documents relating to settlement of any claims, negotiations as to settlement of any claims, and documents exchanged between the parties or their representatives regarding the negotiations or the settlement, including medical records or any other documents concerning the value of any claims and evaluations as to liability for the claims, that are in your possession, custody or control.

8. All documents, correspondence or other written communication, including electronically stored information, e-mails, texts, and electronic communications, and any documents or data compilations reflecting oral communications, concerning the 2001 Honda Civic vehicle owned by Charmayne Gowdy on October 10, 2015 and insured under the policy issued by State Farm to Charmayne Gowdy as of that date, including all repair records for the Honda vehicle regardless of date and all documents reflecting any problems, mechanical or otherwise, that existed with the Honda vehicle on or around October 10, 2015, that are in your possession, custody or control.

9. All other document regarding the July 20, 2017 settlement and assignment agreement between Steven Backalukas and Charmayne Gowdy if not produced in response to the foregoing that are in your possession, custody or control.

10. Any other documents in your files with regard to your representation of Charmayne Gowdy concerning the accident on October 10, 2015 at NW 3rd Avenue and West Hillsboro Boulevard, Deerfield Beach, Florida, claims arising from that accident, and the settlement of claims arising from that accident, not produced in response to the foregoing requests.

11. A privilege log for any responsive documents withheld on grounds of attorney-client privilege, the work product doctrine, or for any other reason.

(Ex. 1)

3. On February 1, 2019, Vacciana served a response to the subpoena, which is attached as Exhibit 2. For each category of documents requested, Vacciana responded: "Produced entire file to Ver Pleog & Lumpkin, P.A. and we adopt its responses." (Ex. 2) Vacciana provided the same response to the request for a privilege log. (Ex. 2) No documents were produced and no privilege log was provided.

4. Ver Pleog & Lumpkin, P.A. represents Plaintiff, Steven Backalukas, in this case.

5. Scolaro was legal counsel for Plaintiff, Steven Backalukas, during the underlying claim and represented him through the mediation and settlement of that claim. State Farm served Scolaro with a non-party subpoena for documents pursuant to Federal Rule of Civil Procedure 45. (Exhibit 3) The subpoena requested 10 categories of documents and a privilege log if any documents were being withheld. (Ex. 3) The requests were similar to those set forth above for the subpoena served on Vacciana, requesting:

1. All documents, correspondence or other written communication, including electronically stored information, e-mails, texts, and electronic communications, and any documents or data compilations reflecting oral communications, relating to the accident that occurred on October 10, 2015, at NW 3rd Avenue and West Hillsboro Boulevard, Deerfield Beach, Florida, between a vehicle driven by Charmayne Gowdy and a motorcycle driven by

4

your client, Steven J. Backalukas, that are in your possession, custody or control.

2. All photographs or video recordings (<u>to be produced in color JPEG and/or original digital format</u>) relating to the accident that occurred on October 10, 2015, at NW 3rd Avenue and West Hillsboro Boulevard, Deerfield Beach, Florida, between a vehicle driven by Charmayne Gowdy and a motorcycle driven by your client, Steven J. Backalukas, that are in your possession, custody or control.

3. All correspondence (including emails, text messages, or other electronic communications) between State Farm and Charmayne Gowdy and/or her representatives regarding coverage under Charmayne Gowdy's policy with State Farm for the accident that occurred on October 10, 2015, at NW 3rd Avenue and West Hillsboro Boulevard, Deerfield Beach, Florida, between a vehicle driven by Charmayne Gowdy, and a motorcycle driven by your client, Steven J. Backalukas, that are in your possession custody or control.

4. All correspondence (including emails, text messages, or other electronic communications) between State Farm and Steven J. Backalukas and/or his representatives, that are in your possession, custody or control.

5. All correspondence (including emails, text messages, or other electronic communications) between Charmayne Gowdy and/or her representatives and Steven J. Backalukas and/or his representatives that are in your possession, custody or control.

6. All documents, correspondence or other written communication, including electronically stored information, e-mails, texts, and electronic communications, and any documents or data compilations reflecting oral communications, regarding the mediation on May 22, 2017 and the Settlement and Assignment Agreement entered on or around July 20, 2017 between Steven Backalukas and Charmayne Gowdy, including all correspondence or documents exchanged between the parties or their representatives relating to and leading to the mediation and settlement as well as all drafts of the settlement agreement and the final version of the settlement agreement that are in your possession, custody or control.

7. All documents, correspondence or other written communication, including electronically stored information, e-mails, texts, and electronic communications, and any documents or data compilations reflecting oral communications, regarding any claim or claims presented by Steven Backalukas to or against Charmayne Gowdy, relating to the accident that occurred on October 10, 2015, at NW 3rd Avenue and West Hillsboro Boulevard, Deerfield Beach, Florida, including any documents relating to settlement of any claims, negotiations as to settlement of any claims, and

5

documents exchanged between the parties or their representatives regarding the negotiations or the settlement, including medical records or any other documents concerning the value of any claims and evaluations as to liability for the claims, that are in your possession, custody or control.

8. All documents, correspondence or other written communication, including electronically stored information, e-mails, texts, and electronic communications, and any documents or data compilations reflecting oral communications, concerning the 2001 Honda Civic vehicle owned by Charmayne Gowdy on October 10, 2015 and insured under the policy issued by State Farm to Charmayne Gowdy as of that date, including all repair records for the Honda vehicle regardless of date and all documents reflecting any problems, mechanical or otherwise, that existed with the Honda vehicle on or around October 10, 2015, that are in your possession, custody or control.

9. All other document regarding the July 20, 2017 settlement and assignment agreement between Steven Backalukas and Charmayne Gowdy if not produced in response to the foregoing that are in your possession, custody or control.

10. Any other documents in your files with regard to your representation of Steven J. Backalukas with regard to the accident on October 10, 2015 at NW 3rd Avenue and West Hillsboro Boulevard, Deerfield Beach, Florida, claims arising from that accident, and the settlement of claims arising from that accident, not produced in response to the foregoing requests.

11. A privilege log for any responsive documents withheld on grounds of attorney-client privilege, the work product doctrine, or for any other reason.

(Ex. 3)

  6.  On February 1, 2019, Scolaro responded by letter stating: "Leesfield Scolaro produced their entire file to Backalukas's counsel Ver Ploeg & Lumpkin and Leesfield Scolaro adopts Ver Ploeg & Lumpkin's responses. (Exhibit 4)

  7.  Following receipt of State Farm's notice of intent to serve these subpoenas, Plaintiff, through his counsel Ver Ploeg & Lumpkin, P.A., objected to the subpoenas by letter:

6

"The three subpoenas are duplicative and create an unnecessary duplication of effort." (Exhibit 5)[3] In that letter, Plaintiff's counsel stated:

> In the First Request for Production to Mr. Backalukas, State Farm requested the entire file of each of the three law firms it now intends to subpoena. We obtained the files and produced all non-privileged documetns and noted all privileged documents on the Privilege Log. Mr. Backalukas provided his Responses to State Farm's First Request for Production, along with his Privilege Log and documents, on December 3, 2018. This production included all non-privileged documents from Mr. Scolaro and Mr. Alexander's files. On December 19, 2018, Mr. Backalukas provided an Amended Privilege log along with a supplemental production of all non-privileged documents from Ms. Vacciana's files.

(Ex. 5)

8. In its First Request for Production to Plaintiff, State Farm had requested the files of Scolaro and the attorneys and/or law firm that represented Charmayne Gowdy (Vacciana's identity was not known to State Farm at the time the requests were served) with regard to the underlying claim. In response to those requests, Plaintiff responded: "Objection. This request seeks documents protected by attorney-client privilege and the work product doctrine. All non-privileged documents will be Bates numbered and produced." (Exhibit 6, Nos. 4 and 5) Plaintiff's Amended Privilege Log is attached as Exhibit 7) Based on the information in

---

[3] State Farm also issued a subpoena to John T. Alexander, Esq. and Alexander & Angleas, P.C. ("Alexander"), counsel for Mr. Backalukas before Scolaro. This motion is not directed to that discovery because Rule 45(d)(2)(B)(i) would appear to require the motion be filed in Michigan, where Mr. Alexander is located. However, it is noteworthy that, in responding to State Farm's subpoena, although not providing a privilege log as requested, Alexander indicated that he was withholding "approximately 26 emails between our firm and the client (between Oct-Nov 2015)", none of which are included on Plaintiff's amended privilege log, and "approximately 9 emails" with Scolaro, whereas Plaintiff's amended privilege log lists eight. It is also curious that Alexander had approximately 26 emails with Plaintiff during his few months of representation of Plaintiff and there are no emails identified on Plaintiff's amended privilege log between Scolaro and Plaintiff, although that representation lasted years. Also curious is that Plaintiff's amended privilege log identifies an email between Vacciana's office and Scolaro's office as part of Scolaro's file (GOWDY 00221-00222), but there is no corresponding email included from Vacciana's file on the amended privilege log. It seems apparent that Plaintiff's counsel has not been provided the complete files of Alexander, Scolaro, and Vacciano as indicated in the objection letter.

7

Plaintiff's counsel's letter quoted above, since confirmed, those documents identified on the log beginning with GOWDY 00026 through GOWDY 00461 were supplied by Scolaro to Plaintiff's counsel, and the documents identified on the log beginning with GOWDY 01048 through GOWDY 01156 were supplied by Vacciana to Plaintiff's counsel.[4]

9.  On March 28, 2019, the undersigned conferred with Vacciana and Scolaro and sent them an email in an effort to resolve the issues raised in this motion. Neither responded. But Plaintiff's counsel in this case did respond that day, indicating he disagreed with State Farm's position and we should move forward with filing this motion to compel. During the course of the email exchange on these issues, the undersigned advised Vacciana and Scolaro (and Plaintiff's counsel) that State Farm intended to schedule their depositions in the near future and indicated a desire to address any privilege issues that they might raise to attempt to avoid appearing for or testifying in those depositions in conjunction with this motion. Neither the non-parties nor Plaintiff's counsel responded as to this issue.

## Memorandum of Law

10.  The discovery sought by State Farm's subpoenas is entirely appropriate in this *Coblentz* case. *See, e.g., Kehle v. USAA Cas. Ins. Co.*, 2017 WL 6729186 (S.D. Fla. Dec. 28, 2017). Indeed, other than Plaintiff asserting privilege and work product objections to some of the documents from the non-parties' files on behalf of the non-parties, there was no objection by the non-parties or Plaintiff to the scope of the requests in the subpoena.

11.  Where, as here, a plaintiff seeks to recover from an insurer under a *Coblentz* settlement agreement, the plaintiff must establish that: (1) coverage exists for the underlying claim asserted by plaintiff against the insured; (2) the insurer wrongfully refused to defend the insured with regard to that underlying claim; and (3) the settlement entered by plaintiff and the

---

[4] *See supra* note 3.

8

insured was reasonable and made in good faith. *Id.* at \*7 (citations omitted). As to the last element, although the ultimate burden of proof as to lack of reasonableness and good faith is on the insurer, the plaintiff must still demonstrate a prima facie showing that the agreement is reasonable and made in good faith. *Id.* (citations omitted). "Good faith" in this context means the settlement is not "tainted by bad faith, fraud, collusion, or without effort to minimize liability." *See Mid-Continent Cas. Co. v. Am. Pride Bldg. Co.*, 534 Fed. Appx. 926, 927-28 (11th Cir. 2013); *see also Jimenez v. Gov't Employees Ins. Co.*, 651 Fed. Appx. 850, 854 (11th Cir. 2016). As such, discovery directed to the files of counsel representing the insured (Ms. Gowdy here) and the claimant (Plaintiff here) during the underlying claim, including communications leading to and documents concerning the settlement, is entirely appropriate. *See, e.g., Kehle*, 2017 WL 6729186; *Kehle v. USAA Cas. Ins. Co.*, 2018 WL 2435176 (S.D. Fla. May 30, 2018); *Bradford v. Mid-Continent Cas. Co.*, 15 F. Supp. 3d 1253 (M.D. Fla. 2014); *Wrangen v. Penn. Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273 (S.D. Fla. 2008).

12. Pursuant to Rule 45(a)(1)(D), "a command in a subpoena to produce documents, electronically stored information, or tangible things requires the <u>responding person</u> to permit inspection [and] copying . . . ." Rule 45(e)(1) requires the "<u>person responding to a subpoena</u> to produce documents" either as they are kept in the ordinary course of business or organize and label them to correspond to the categories requested. Rule 45(e)(2)(A) requires "<u>[a] person withholding subpoenaed information</u>" under a claim of privilege or work product to expressly make that claim and provide a privilege log. Vacciana and Scolaro have failed to comply with their obligations under Rule 45.

13. As Rule 45 provides, the subpoenaed person must produce responsive documents and provide a privilege log of documents withheld due to privilege or work product. State Farm

is entitled to get the documents requested (and any privilege log) directly from Vacciana and Scolaro.  State Farm is not required to accept the filtered production provided by Plaintiff in this case after Vacciana and Scolaro supposedly voluntarily provided their files or portions of their files to Plaintiff's counsel.  Nor should Plaintiff's counsel in this case be creating a privilege log for these non-parties.  Indeed, Plaintiff does not have standing to assert an attorney-client or work product privilege on behalf of non-parties to this lawsuit.  Such was the holding of this Court in *Kehle*, 2017 WL 6729186, *17 & n.10, which also involved a claim to enforce a *Coblentz* agreement against an insurer and the insurer's discovery to the attorneys representing the insured and another defendant in the underlying claim.

14. Even if the Court were to allow these non-parties to provide their documents to Plaintiff and have Plaintiff filter them through to State Farm and prepare a privilege log for the non-parties, the documents on Plaintiff's amended privilege log should be ordered produced by the non-parties or by Plaintiff.  The doctrines of "at-issue waiver," "subject-matter waiver," and "sword and shield" affect a waiver of any otherwise applicable work product or attorney-client privilege to the documents on Plaintiff's amended privilege log.  *See, e.g., Kehle*, 2018 WL 2435176; *Bradford*.

15. "The subject-matter waiver doctrine provides that a party who injects into the case an issue that in fairness requires an examination of communications otherwise protected by the attorney-client privilege [or work product doctrine] loses that privilege."  *Kehle*, 2018 WL 2435176, *5 (citing *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F. 3d 1386, 1422 (11th Cir. 1994), and *GAB Bus. Servs., Inc. v. Syndicate 627*, 809 F. 2d 755, 762 (11th Cir. 1987)).  Under this doctrine, a party waives work-product or attorney-client privilege when: (1) assertion of the protections results from some affirmative act by the party invoking the protection; (2) through

this affirmative act, the asserting party puts the protected information at issue by making it relevant to the case; and (3) application of the protection would deny the opposing party access to information vital to its defense. *Id.* at *7 (citations omitted) (referring to the "*Hearn test*").[5]

16.     In *Kehle*, this Court was addressing nearly identical discovery by an insurer to counsel for plaintiff and the defendants (including the insured) in the underlying claim, including defense counsel's entire files and emails between plaintiff's counsel in the underlying claim and his counsel in the Coblentz action. 2017 WL 6729186, *3-4; 2018 WL 2435176, *1. The Court found that all elements of the *Hearn* test were met such that even opinion work product documents from plaintiff's counsel in the underlying claim, including emails with plaintiff's counsel in the *Coblentz* action, were required to be produced to the insurer defendant in the *Coblentz* action:

> The Court finds that Defendant has met the first element of the *Hearn* test because it has shown that the assertion of the opinion work-product privilege was affirmatively raised by Plaintiff when she filed this lawsuit. *See Bradfield*, 15 F. Supp. 3d at 1257.  Here, Plaintiff, who is the party invoking the work-product protection, will have to make a *prima facie* showing that the hybrid *Coblentz* agreement/arbitration award was reasonable and made in good faith in order to enforce the agreement. *Id.*  Therefore, Plaintiff cannot "hide behind the shield of privilege" to prevent Defendant from effectively challenging the evidence she presents. *Id.*
>
> Defendant has met the second element of the *Hearn* test by demonstrating that Plaintiff has put the protected information at issue by making it relevant to this case. . . .  Plaintiff has made the emails between Plaintiff's former counsel and her current counsel relevant to this case because she must show that the hybrid *Coblentz* agreement/arbitration award was not tainted with "bad faith, fraud, or collusion." *Id.* . . .
>
> Finally, the Court finds that allowing Plaintiff to maintain her work-product privilege would deny [the insurer defendant] access to information vital to its defense because it would preclude [the insurer] from probing into the primary source of evidence of alleged bad faith, fraud, and collusion. Plaintiff has brought a breach of contract action and seeks to enforce the hybrid *Coblentz* agreement . . . . against Defendant [insurer] . . . .  As stated above, the spirit of the at-issue

---

[5] *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975).

>   waiver doctrine is to encourage fairness. Enforcing the hybrid *Coblentz* agreement/arbitration award requires Plaintiff to establish, by a prima facie showing, that the hybrid *Coblentz* agreement/arbitration award was reasonable and made in good faith, but the ultimate burden of proof will rest with [the insurer]. . . . It would be manifestly unfair to prohibit Defendant from discovery into the communications between Plaintiff's former and current attorneys regarding the settlement agreement, the arbitration proceedings, and the arbitration award which are directly relevant to the reasonableness and good faith of the hybrid *Coblentz* agreement/arbitration award, and to issues of alleged collusion.
>
>   [T]he Court will not "hamstring Defendant [insurer] from pursuing discovery into whether the settlement between Plaintiff and [the insured] was reasonable, in good faith, or a sham." To not allow Defendant discovery into specific areas of the underlying lawsuit would deprive Defendant of its only source of information needed to determine if the settlement agreement and arbitration award were in fact reasonable, free from collusion, and made in good faith, and it would indeed deny [the insurer] access to information vital to its defense. Thus, Defendant has met the third element of the *Hearn* test.

2018 WL 2435176, *7-8 (some citations omitted).

17. The same analysis and conclusions are applicable here. The assertion of work product and attorney-client privilege was affirmatively raised by Plaintiff when he filed this lawsuit because Plaintiff will have to make a prima facie showing that the *Coblentz* settlement agreement here was reasonable and made in good faith, and without fraud or collusion. Plaintiff has put the protected information at issue by making it relevant to this case because he must show that the *Coblentz* agreement was not tainted by bad faith, fraud, or collusion. Allowing Plaintiff to maintain work product or attorney-client protection to the information would deny State Farm access to information vital to its defense. To prevent State Farm from discovering how the underlying claim was settled and the terms and amount of the settlement came about would deprive it of its only source of information needed to determine if the settlement agreement was in fact reasonable, free from collusion, and made in good faith. Given this action is brought by virtue of an assignment from State Farm's insured, Charmayne Gowdy, to Plaintiff

and the *Coblentz* settlement agreement Ms. Gowdy entered expressly called for the filing of this *Coblentz* action against State Farm, the same analysis applies to any information claimed to be protected by work product or attorney-client privilege by Ms. Gowdy or her attorney, albeit asserted by Plaintiff.

18. Accordingly, this Court should overrule Plaintiff's objections on behalf of Vacciana and Scolaro as to the documents on Plaintiff's amended privilege log and find that protections of work product and attorney-client privilege, if any, have been waived under the at-issue, subject matter, and sword and shield doctrines.[6] Alternatively, State Farm requests that the Court conduct an in camera review of the documents to determine the applicability of any such protections.

19. In addition, State Farm anticipates that privilege and work product objections may be asserted at the depositions of Vacciana and Scolaro, as well as other witnesses.[7] State Farm requests that this Court, in ruling on this motion as to the subpoenas for documents, provide guidance on these issues so as to avoid the need for further motions and discovery disputes to be brought before this Court on these issues and the resulting need for depositions to be taken multiple times.

---

[6] Plaintiff (and the non-parties) did not assert any objection based on the mediation privilege under Fla. Stat. § 44.405, or otherwise, to any of the discovery sought. In any event, any such privilege, even if it were applicable, would be waived under the same doctrines. *See Barfield*, 15 F. Supp. 3d at 1256-57.

[7] During the course of the deposition of Charmayne Gowdy, State Farm's insured, Plaintiff's counsel objected and instructed Ms. Gowdy not to answer any questions concerning discussions at mediation, asserting a Florida mediation privilege, as well as questions concerning discussions with counsel, asserting attorney-client privilege. These objections were improper and denied State Farm information vital to the defense of Plaintiff's *Coblentz* claim. *See Bradford*; *Kehle*. This issue has not been brought before the Court yet as State Farm may be able to obtain testimony from other witnesses, including Vacciana, Scolaro, and Ms. Gowdy's parents, Billy and Maryann Gowdy (who were at the mediation), with proper direction from the Court here, possibly eliminating the need to reconvene Ms. Gowdy's deposition.

## Conclusion

WHEREFORE, based on the foregoing discussion and authorities, State Farm requests that the Court enter an order granting this motion, enforcing the subpoenas served on Vacciana and Scolaro, and compelling them to produce the documents requested in the subpoena, including any documents identified on Plaintiff's amended privilege log.  In addition, State Farm requests that the Court enter an order as to waiver of attorney-client, work product, or other privileges, including mediation privilege, based on the at-issue, subject-matter, and sword-and-shield doctrines to guide the parties in further discovery, including upcoming depositions.

## Certificate of Conference

The undersigned, pursuant to Local Rule 7.1(a)(3), certifies that he has conferred with all parties and non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.  *See supra* ¶ 9.

Dated: April 9, 2019                                  Respectfully submitted,

*s/   Paul L. Nettleton*
Paul L. Nettleton (FBN 396583)
CARLTON FIELDS
100 Southeast Second Street, Suite 4200
Miami, Florida  33131-9101
Telephone:  (305) 530-0050
pnettleton@carltonfields.com
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

   I HEREBY CERTIFY that on April 9, 2019, a true and correct copy of the foregoing was served by email to the below addressees:

Stephen A. Marino, Jr., Esq.
Email: smarino@vpl-law.com
   smcgee@vpl-law.com
S. Alice Weeks, Esq.
Email: sweeks@vpl-law.com
Ver Ploeg & Lumpkin, P.A.
100 S.E. Second Street, 30th Floor
Miami, FL 33131
Tel: 305-577-3996
Fax: 305-577-3558
*Attorneys for Plaintiff*

| | |
|---|---|
| J. Samantha Vacciana, Esq. | Thomas Scolaro, Esq. |
| Trial Lawyers of Florida | Leesfield Scolaro |
| 2335 East Atlantic Blvd., Suite 406 | 2350 South Dixie Highway |
| Pompano Beach, FL 33062 | Miami, FL 33133 |
| Email: eservice@triallawyersspb.com | Email: scolaro@leesfield.com |
|    Samantha@triallawyerspb.com | |

          *Paul L. Nettleton*
          Paul L. Nettleton